Filed 3/25/16  P. v. Logan CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050983 |
| v. | (Super. Ct. No. 12WF3463) |
| RICHARD ALAN LOGAN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed.

Alissa Bjerkhoel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Ryan H. Peeck, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Richard Alan Logan was convicted of residential burglary, vehicle theft, possessing a controlled substance and resisting arrest. He contends his burglary conviction must be reversed due to insufficient evidence, instructional error and prosecutorial misconduct. We disagree and affirm the judgment.

FACTS

On the afternoon of September 30, 2012, Joel Potter's Jeep was stolen from his home in Hollywood. The next day around noon, Police Officer Christopher Karrer spotted the Jeep going through a parking lot in Los Alamitos. Knowing it was stolen, Karrer activated his overhead lights and stopped the vehicle. He then walked up to the Jeep to find appellant in the driver's seat and Ashley Coffey beside him. As Karrer was looking into the Jeep's back window, appellant suddenly stepped on the gas and took off. However, he did not get far; another police officer stopped him within minutes in a nearby parking lot.

By the time Karrer arrived at that location, appellant had already fled the scene on foot. Coffey, who was standing on the passenger side of the Jeep, told Karrer that appellant had picked her up hitchhiking earlier in the day and that she believed his name was Joshua Green. Karrer searched the scene and found a bag containing methamphetamine and marijuana near the driver's door of the Jeep. Inside the Jeep, he also discovered a purse containing a driver's license and social security card in the name of Barbara Duck. After seizing those items, Karrer located appellant on the roof of a nearby house. He was wearing only boxers and a tank top, indicating he was in the midst of a clothing change. He was promptly arrested and taken into custody.

On the way to the police station, appellant asked what he was being charged with, and Karrer told him possessing a stolen vehicle and narcotics. When Karrer asked appellant about his "habit," he said he daily used an "8 ball" of "crystal," which is street jargon for one-eighth ounce of methamphetamine.

2

At the police station, appellant was interviewed by Karrer and another officer. After admitting he discarded the drug-laden bag that was found near the Jeep, he asked for a guarantee he would not be prosecuted if he provided information on cases in other counties. The officers told appellant they could not guarantee him anything, but they would let his prosecutors know he cooperated if he could provide information about any crimes in Orange County. As it turned out, appellant had no such information, but he did talk about the circumstances surrounding his own case.

Appellant claimed he did not steal Potter's Jeep, but he knew it was stolen, which is why he fled from the police. He also claimed Coffey was his girlfriend. When questioned about Duck's belongings, he initially said he found her purse at a gas station the previous evening. But he subsequently changed his story and said he found it that morning at Seal Beach. Even though Seal Beach has a fairly prominent pier, appellant said there was no pier in sight when he came across Duck's purse.

Based on his possession of the purse and the Jeep, appellant admitted he was guilty of possessing stolen property, which he described as a "Class B" felony. However, he insisted he was not guilty of residential burglary, which he described as a "Class A" felony. In denying the burglary, appellant suggested the police would not find any evidence of his involvement in that crime if they investigated the victim's house.

On the day of appellant's arrest, the police called Duck to let her know they had found her purse. Duck, who had been home at her Huntington Beach condominium all that morning, had not even realized her purse was missing. At trial, she testified she worked at home and always kept her front door locked. But she did not always lock the door leading into her garage, which was right off her kitchen. Duck was in the habit of leaving her purse on the kitchen counter when she was home. She was 90 percent sure she had seen her purse there on the morning the police called her.

3

Describing her activities that morning, Duck said she got up early to do some work in her home office. At about 9:30 a.m., she went upstairs to take a shower, and then about 45 minutes later, she went downstairs and resumed working. After speaking with the police, she checked her garage and discovered the glove compartment of her car was open and its contents had been disturbed. She also noticed her garage door was open about six inches. The police dusted Duck's car for fingerprints but none were found.

In closing argument, defense counsel conceded appellant was guilty of unlawfully taking or driving a vehicle, possessing a controlled substance and resisting arrest. However, he asserted appellant was not guilty of residential burglary because he had nothing to do with the taking of Duck's purse. In arguing otherwise, the prosecutor theorized appellant personally entered Duck's home to steal her purse. Alternatively, the prosecutor argued appellant aided and abetted Coffey in taking Duck's purse from her home. The jury convicted on all counts. After finding appellant had a prior serious felony conviction, the court sentenced him to 13 years in prison.

DISCUSSION

*Sufficiency of the Evidence*

Appellant contends there is insufficient evidence to support his conviction for residential burglary. The record shows otherwise.

"In reviewing the sufficiency of the evidence to support a criminal conviction, we review the record '"in the light most favorable to the judgment to determine whether it discloses substantial evidence – that is, evidence that is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citation.] We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. [Citation.]

4

"'The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]'" [Citation.]" (*People v. Pham* (2009) 180 Cal.App.4th 919, 924-925.)

The law in California is well established: The possession of recently stolen property is deemed so incriminating there need only be slight corroboration to sustain a conviction for burglary. (*People v. Mendoza* (2000) 24 Cal.4th 130, 176; *People v. Harris* (1968) 266 Cal.App.2d 426, 427.) Corroboration can take the form of false statements or any conduct indicative of guilt, such as flight or evasiveness. (*Ibid.*; *People v. Wells* (1960) 187 Cal.App.2d 324, 329; *People v. Wade* (1946) 76 Cal.App.2d 430, 431.)

The record in this case shows appellant repeatedly fled from the police after he was pulled over. Although he claimed he took off because he knew the Jeep was stolen, the jury was not required to accept this explanation but could instead reasonably infer appellant fled to avoid getting in trouble for stealing Duck's purse. After all, the theft occurred close in time to appellant's arrest, and he gave conflicting stories about how he allegedly came into possession of the purse. At first he claimed he found the purse at a gas station the night before his arrest, but he later claimed he found it at Seal Beach the morning he was arrested. Moreover, his beach story was clouded by his misdescription of Seal Beach as having no pier. And, of course, the victim had not been

5

to Seal Beach after seeing her purse on her kitchen counter, so defendant's story was rather spectacularly unconvincing. All told, the evidence was more than sufficient to support the jury's finding appellant was guilty of residential burglary.

*Instructional Error*

Appellant also contends there was insufficient evidence to support instructions on aiding and abetting liability. We agree but find the error was harmless under the circumstances presented.

"'The test for determining whether instructions on a particular theory of guilt are appropriate is whether there is substantial evidence which would support conviction on that theory. [Citation.]'" (*People v. Campbell* (1994) 25 Cal.App.4th 402, 408.) By definition "substantial evidence" requires actual evidence; it cannot be arrived at by mere speculation, conjecture or surmise. (*People v. Perez* (1992) 2 Cal.4th 1117, 1133.)

At trial, the court was initially inclined not to instruct the jury on aiding and abetting liability. However, the prosecutor claimed there was a sufficient factual basis for this theory. He asserted, "I think there is an inference that can be made or an assumption that can be made by anyone in the jury thinking, hey, you know, the stolen purse is in the [Jeep]. There's another individual (Coffey) in the [Jeep]. Maybe [appellant] actually didn't commit the residential burglary. Maybe [Coffey] was the one that actually entered the house and stole the purse. I think that's a totally legit inference, because [appellant] admitted driving the [Jeep]. He was driving it since the night before. He told the police [Coffey was] his girlfriend. [¶] There's evidence of aiding and abetting. He would have had to drive her to the house. I think if she is the one that went in the house and stole it, he's sitting out in the alleyway. [¶] . . . [¶] . . . [¶] [And] [i]f she went into the house, he would have, obviously, known about it. He would have had to drive her there. He would have had to wait for her to go in, come back out with the purse."

6

Finding this argument persuasive, the trial court provided the jury with full instructions on aiding and abetting liability. (CALCRIM Nos. 400, 401.) The court also instructed the jurors that another person, i.e., Coffey, may have been involved in appellant's crimes, but they could not speculate about whether she had been prosecuted. (CALCRIM No. 373.) In support of its decision to give these instructions, the court reasoned, "There's a possibility [the jurors] think [Coffey] did something and [appellant] was an aider and abettor, based upon [their] being together in the car."

The prosecutor and the court both had to resort to the words "maybe," "assumption" and "possibility" to support this theory. This underscores the weakness of their position. As defense counsel pointed out below, there was no evidence the Jeep was anywhere near Duck's residence, let alone in a nearby alley. Nor was there any evidence placing Coffey in the vicinity of Duck's home at the time of the burglary. Like appellant, Coffey was found to be in *possession* of Duck's recently stolen purse. However, standing alone, that fact was insufficient to support a finding Coffey was involved in the *taking* of that purse. (*People v. Rogers* (2013) 57 Cal.4th 296, 335.) Moreover, there is simply no evidence Coffey intended to commit the charged burglary or that appellant intended to help her do so.

The trial court should not have instructed the jury on aiding and abetting liability, but it could not have made a difference in the outcome of the case. Giving instructions on a factually unsupported theory is not grounds for reversal "unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1130.) Here, the prosecution's primary theory of the case was that appellant personally committed the charged burglary by going into Duck's house and stealing her purse. Most of the prosecutor's closing argument was devoted to this theory. Toward the very end of his argument, the prosecutor did briefly mention the aiding and abetting instructions, but his lack of enthusiasm for this theory was made obvious when

7

he told the jury, "You might be thinking, maybe [Coffey] entered the house, and she put the purse in the [Jeep]. [¶] Maybe. I don't think so, based on all the defendant's conduct subsequent, but maybe."

Given the disproportionate emphasis on the direct liability theory and the lack of evidence supporting an aiding and abetting theory, it is not reasonably likely the jury convicted appellant of burglary based solely on the theory he was merely Coffey's wheelman. Therefore, the error in instructing on aiding and abetting is not cause for reversal.

*Prosecutorial Misconduct*

Appellant contends the prosecutor engaged in multiple instances of prejudicial misconduct during the trial. We do not see it that way.[1]

As the representative of the government in a criminal case, "'It is a prosecutor's duty "to see that those accused of crime are afforded a fair trial." [Citation.]'" (*People v. Daggett* (1990) 225 Cal.App.3d 751, 759.) A prosecutor "may strike hard blows, [but] he is not at liberty to strike foul ones." (*Berger v. United States* (1935) 295 U.S. 78, 88.) "Under California law, a prosecutor commits reversible misconduct if he or she makes use of 'deceptive or reprehensible methods' in attempting to persuade either the trial court or the jury, and when it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted. [Citation.] Under the federal Constitution, conduct by a prosecutor that does not result in the denial of the defendant's specific constitutional rights . . . but is otherwise worthy of condemnation, is not a constitutional violation unless the challenged

---

[1] As appellant admits, his trial attorney did not object to all of the alleged misconduct, which raises the specter of forfeiture. (*People v. Samayoa* (1997) 15 Cal.4th 795, 841 ["As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion – and on the same ground – the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety."].) However, because appellant contends his attorney was ineffective to the extent his objections were inadequate we will consider all his arguments on their merits. (*People v. Daya* (1994) 29 Cal.App.4th 697, 714.)

action "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" [Citation.]" (*People v. Rundle* (2008) 43 Cal.4th 76, 157.)

Appellant's first claim of prosecutorial misconduct relates to one of the primary issues at trial: Was appellant being honest when he told the police he was not involved in the burglary of Duck's residence? The defense contended appellant's willingness to admit the possession crimes indicated he was telling the truth when he denied committing the burglary. The defense even accused the prosecution of trying to "have [its] cake and eat it, too" by urging the jury to believe all of the incriminating aspects of appellant's statement but not the one part that was exculpatory.

In attempting to explain why this made sense, the prosecutor claimed appellant was a sophisticated criminal who was out to minimize his potential punishment. As proof of this, the prosecutor tried to elicit evidence through Officer Karrer that burglary is a more serious offense than possessing stolen property and that appellant was aware of this fact. Although the trial court sustained objections to this line of questioning, appellant contends this area of inquiry was not only improper, it was highly prejudicial because it effectively invited the jury to consider the issue of punishment.

Appellant is correct that "possible punishment is not a proper matter for jury consideration. [Citation.]" (*People v. Holt* (1984) 37 Cal.3d 436, 458.) But the prosecutor's claims and questioning were not intended to inflame the jury or distract it from its responsibility to assess appellant's culpability based on the facts of the case. Instead, the prosecutor was simply offering an alternative explanation to defense counsel's take on the evidence. Although California does not classify its felonies by letter gradations, appellant's reference to burglary as a "Class A" felony and possessing stolen property as a "Class B" felony indicates he believed burglary is the more serious of the two offenses. The evidence also shows appellant was angling for some sort of deal while he was speaking with the police. His apparent awareness of the distinction in gravity between the subject offenses thus provided an alternative reasonable explanation

9

for why he was reluctant to admit the burglary while readily conceding the possession offenses. Therefore, it was permissible for the prosecutor to explore this area. The prosecutor's theory and comments were based on the evidence and did not constitute an improper or unfair attempt to influence the jury.

Appellant also takes umbrage with the prosecutor's attempt to get the jury to sympathize with Duck. Working on the assumption appellant stole Duck's purse while she was taking a shower, the prosecutor told the jury to "[t]hink about how terrifying that would be, . . . especially when you're a woman in Miss Duck's position[.] You are alone. You are in your house taking a shower, and we have this guy downstairs in your kitchen going through your purse." Despite the fact the trial court sustained defense counsel's objection to these statements as "improper argument," the prosecutor asked the jury to "[t]hink about how terrifying that would be" before eventually moving on to another topic.

Respondent attempts to defend these comments on the basis they are not as graphic as comments that have been condemned in other cases. However, the state also admits the prosecutor would probably have been better off steering clear of the comments altogether. We agree. Indeed, the law is well established that it is improper for a prosecutor to invite jurors to put themselves in the victim's position because of the natural emotion and sympathy it evokes. (*People v. Jackson* (2009) 45 Cal.4th 662, 691.) The emotions of the victim are generally not a part of a burglary case.

However, defense counsel offered a strong rejoinder to the subject remarks. Speaking to the jurors, he stated, "Let me tell you another thing you cannot do, you're not going to be manipulated into this idea would you want a creepy guy like that going into your house when you're showering if you're a woman? You are not going to let that affect you, because that is wrong. That is not the law." In sustaining defense counsel's

objection to the subject comments, the court made this clear to the jury, as well. In addition, the court instructed the jurors they were not allowed to let sympathy or prejudice influence their decision.

We presume the jury heeded these instructions. (*People v. Cain* (1995) 10 Cal.4th 1, 34.) Given the way the issue was handled, we do not believe the challenged remarks rendered appellant's trial unfair or it is reasonably likely he would have obtained a more favorable result had they not been made. Indeed they gave the defense a fine opportunity to undermine the jury's confidence in the prosecution – an opportunity that was well exploited. Thus, they do not warrant reversal. (*People v. Rundle, supra*, 43 Cal.4th at p. 157.)

Next, appellant contends the prosecution misused CALCRIM No. 226, which allows the jury to disbelieve everything a "witness" says if it believes the witness has lied about something significant in the case. As respondent concedes, appellant did not testify at trial, so he was not a "witness" for purposes of CALCRIM No. 226. Yet, the prosecutor invoked this instruction in urging the jury to disbelieve appellant's pretrial denial about the burglary because he gave conflicting stories to the police about where he found Duck's purse.

Given that CALCRIM No. 226 only applies to witnesses, we agree this argument was improper. However, the trial court consistently sustained defense counsel's objections to the argument on the basis it amounted to "a misstatement of law." The court also granted defense counsel's request to strike the prosecutor's argument, which made it obvious to the jury CALCRIM No. 226 did not apply to appellant's pretrial statements. There is nothing in the record to suggest the jurors ignored the court's ruling in this regard.

Even if they did, we would be hard pressed to reverse on that basis. While the scope of CALCRIM No. 226 is limited to witnesses, the basic idea underlying the instruction – someone who lies about one thing may not be telling the truth about another

11

– has universal application to witnesses and nonwitnesses alike.  (See generally *People v. Hill* (1998) 17 Cal.4th 800, 819 [prosecutor's have wide latitude in closing argument and may properly base their arguments on matters of common knowledge and experience].)  Moreover, the jury was properly instructed per CALCRIM No. 362 that it could consider the veracity of appellant's pretrial statements about the burglary in determining whether he was guilty of that offense.  So even though CALCRIM No. 226 was inapt as to appellant, we do not believe the prosecutor committed reversible error by invoking it in this case.

Lastly, appellant contends the prosecutor committed misconduct by suggesting to the jurors they were not allowed to believe appellant's story about how he came into possession of Duck's purse.  Here is what the prosecutor told the jurors in that regard:  "Go back to those jury instructions.  You can't let bias affect your decision.  That means bias for or against me or the defendant.  So, if you're choosing to believe the defendant's story in the face of the fact that he lied on that specific topic . . . and he has no detail to support his story, you would have a clear bias for the defendant, because there's no reason why you would believe that story, unless you just wanted to ignore all the evidence and you had a bias for him, and that would violate the rules."

Appellant interprets these remarks as an improper threat to the jurors that they would be breaking the law if they believed appellant's story about finding Duck's purse.  That's a reach too far.  It appears the prosecutor was simply attempting to remind the jurors they were not permitted to let bias influence their opinion of appellant's credibility.  In making this point, the prosecutor also made it clear he did not believe there was any rational justification for believing appellant's story.  This was a valid argument subject to rebuttal by the defense.  Although it was ineloquently constructed, it is not reasonably likely the jurors construed it to mean they lacked the authority to acquit appellant on the basis of his denial, so the argument is not cause for reversal.  As a matter of fact, whether considered individually or in combination, none of the claims raised by

12

appellant undermines our confidence in the verdict or indicates appellant was denied his constitutional right to a fair trial.  Therefore, there is no reason to disturb the jury's verdict.

## DISPOSITION

The judgment is affirmed.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.